1  Jeremy R. Fietz, Esq. (SBN 200396)
   Benjaman T. Adams, Esq. (SBN 207281)
2  Gabriel M. Quinnan, Esq. (SBN 239844)
   ADAMS ● FIETZ
3  1510 Fourth Street
   Santa Rosa, California, 95404
4  Tel: (707) 999-9999
   Fax: (707) 595-4473
5

6  Christy A. Chouteau, Esq. (SBN 228961)
   3436 C Mendocino Avenue
7  Santa Rosa, California, 95403
   Tel: (707) 508-7861
8  Fax: (707) 921-7339

9  Charles W. Applegate, Esq. (SBN 226777)
   3436 C Mendocino Avenue
10 Santa Rosa, California, 95403
   Tel: (707) 775-9459
11 Fax: (707) 509-5020

12 Attorneys for Plaintiff

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15 CHRISTINA DANIELS,                    ) Case No:   3:13-cv-4543
                                         )
16           Plaintiff,                  )
                                         )
17      v.                               )
                                         ) **COMPLAINT**
18 CITY OF COTATI, a municipal governmental )
   body; ERIC BILCICH, individually and in his ) **42 U.S.C. § 1983 & the Constitution of the**
19 official capacity as police officer for City of ) **United States**
   Cotati; and DOES 1 -20 inclusive,    )
                                         ) **DEMAND FOR JURY TRIAL**
20           Defendants.                 )
                                         )
21

22      Plaintiff CHRISTINA DANIELS brings this Complaint for damages arising from the

23 unlawful search and seizure, cruel and unusual punishment and various violations of the Due

24 Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States

25 committed by the Defendants in the years 2011 and 2012 in the California County of Sonoma.

**COMPLAINT**

# I.

## PARTIES

1.     Plaintiff CHRISTINA DANIELS is and was, at all times relevant to this action, an adult resident of the State of California in the County of Sonoma.

2.     Defendant ERIC BILCICH is and was, at all times relevant to this action, an adult resident of the California County of Sonoma and a peace officer employed by the Police Department of the City of Cotati.

3.     Defendant CITY OF COTATI is a municipal governmental entity, located in the California County of Sonoma.

4.     Plaintiff is ignorant of the true names and capacities of other individuals who may be responsible for the injuries she suffered in consequence of the violation of her federally protected rights. Plaintiffs will seek leave of the Court to amend this Complaint to identify such persons by name and include them as Defendants in this action if and when their identities are ascertained.

5.     In the allegations of this Complaint, Defendants acted as the agents, servants, employees and alter-egos of their Co-Defendants. Defendants acted within the course and scope of their agency and employment, and acted with knowledge, consent and approval of their Co-Defendants. Their conduct was approved and/or later ratified by their Co-Defendants.

# II.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action in accordance with Article III of the Constitution of the United States, because the subject matter of this lawsuit arises from alleged violations of the Constitution of the United States, and thus represents a federal question.

7.     This Court has jurisdiction over this action in accordance with Article III of the Constitution of the United States, because the Plaintiff in this matter has suffered an injury

---

**COMPLAINT**

proximately caused by the violation of her rights under the Statutes and the Constitution of the United States, and because her injury can be redressed by this Court.

8.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391, because this Court lies within a Federal Judicial District in which the Defendants reside; and because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred within the geographic bounds of said Federal Judicial District.

### III.

### GENERAL ALLEGATIONS

9.      On October 3, 2011, Plaintiff was travelling on foot on a sidewalk adjacent to Old Redwood Highway in the City of Cotati. While engaged in his duties as a peace officer employed by the Defendant CITY OF COTATI, Defendant BILCICH later reported that he had observed the Plaintiff in a nearby bar (a potential violation of the terms of her probation) and was in the process of investigating that alleged violation.

10.     According to Defendant BILCICH's report of the incident, he and his partner (Andrew Lyssand) observed Plaintiff in the vicinity of a bar, lost sight of her, and then observed her running towards a taxi cab. According to the report, Defendant BILCICH called out to her, "Where are you going Christina?" as she jogged passed him. This casual statement apparently was the first actual contact he made with the Plaintiff that night. Because she did not immediately stop to engage him, Defendant BILCICH then reports calling out to her to "Come here." Defendant BILCICH then ran around the block to meet up with the direction Plaintiff was jogging.

11.     According to Defendant BILCICH's report, Plaintiff approached him; she did not turn around and head the opposite direction. She did nothing to evade or elude him. Rather, she slowed to a stop in front of him. According to his report, and without any warning, Defendant BILCICH seized hold of Plaintiff's arm and applied significant pressure. Defendant BILCICH then ordered Plaintiff to turn around and place her hands behind her back.

---

**COMPLAINT**

12.     Defendant BILCICH is significantly stronger than Plaintiff and is a trained police officer. He twisted her arm in order to spin her around so that she was facing away from him. As Plaintiff turned to face away from Defendant BILCICH, he applied even more pressure to her arm for no apparent reason. Plaintiff screamed due to the pain, and reacted in an involuntary and reflexive way by pulling her arm away.

13.     According to the report, Defendant BILCICH responded to Plaintiff's reflexive reaction by squeezing her arm even tighter. Having actually spun her around so that she was facing away from him, the significantly stronger BILCICH did not put handcuffs on Plaintiff. He continued to squeeze her arm and thereby cause her ever-greater pain. According to the report, Plaintiff turned around and faced BILCICH and yelled "no" in protest over the pain BILCICH was inflicting upon her. Instead of asking for or even allowing Plaintiff an opportunity to submit peacefully Defendant BILCICH rapidly escalated his assault.

14.     In his subsequently authored police report, Defendant BILCICH asserted that the conduct of the significantly weaker and unarmed female Plaintiff was an "obvious attempt to resist and assault me." There is, however, nothing in the report to suggest that Plaintiff had any intent of assaulting Defendant BILCICH, or that she made any actual attempt to assault Defendant BILCICH. After his baseless and self-serving reference to an attempted assault, Defendant BILCICH then related in his report how he took Plaintiff to the ground using a leg sweep while "controlling" Plaintiff's arms so that she had no way to break her fall.

15.     Defendant BILCICH's leg sweep forced Plaintiff to the ground so that she fell from her feet and landed with her face and knees breaking her fall onto the concrete. Plaintiff's four front teeth were knocked out, her cheekbone was fractured, and Plaintiff lost consciousness due to a concussion.

16.     Defendant BILCICH's mission of forcing Plaintiff into total submission at any cost was now accomplished. With Plaintiff on the ground, Defendant BILCICH handcuffed and

proceeded to "question" her. Defendant then noticed, upon rolling her reportedly "limp body" over, that Plaintiff was neither moving nor responding verbally.

17.     When Defendant BILCICH turned Plaintiff's motionless body over he noticed that her face had been smashed in when he drove it into the concrete. Teeth were missing and he described "a moderate amount of free blood coming from her face and mouth." Plaintiff "appeared to be breathing but was in and out of consciousness." Plaintiff regained partial consciousness while lying on the concrete. She heard Defendant BILCICH laughing with another Cotati police officer about how Plaintiff had bled all over his boots.

18.     Despite "noticing" that he had left Plaintiff bloodied and unconscious, Defendant BILCICH did not request medical assistance for Plaintiff. It was another Cotati Police Officer, Andrew Lyssand, who called for emergency medical assistance when he noticed Plaintiff coughing out blood. It was Officer Lyssand who supported Plaintiff's neck and placed her in a safe position in order to reduce the possibility that she would choke to death on her own blood.

19.     Medical personnel soon arrived on scene. Noticing that Plaintiff had stopped breathing, medics inserted a catheter as a means of maintaining an airway. So alarmed was Officer Lyssand by the condition of Plaintiff that he pounded his fist on the ambulance and yelled "go!" to the driver to spur him on to the Hospital. After administering additional emergency medical assistance, the Medics transported Plaintiff to a nearby hospital. Later that night Plaintiff would be airlifted to a second hospital to address the dire condition that resulted from Defendant BILCICH'S assault.

20.     After the ambulance had departed, a large pool of blood was left on scene where Defendant BILCICH had smashed Plaintiff's face into the concrete. Plaintiff's teeth were left in the pool of blood.

21.     As a result of the injuries that Plaintiff suffered, she has incurred approximately $100,000 in medical bills. She suffered extreme pain and still endures disfigurement and

---

**COMPLAINT**

permanent facial scarring due to the loss of teeth and fractured cheekbone. Plaintiff, who received a concussion from her head injuries, also suffered and still suffers from severe emotional distress arising from the violation of her person and her rights.

22.   At the time she was assaulted by Defendant BILCICH, Plaintiff was on probation for a past offense. Her probation continued after she was released from the hospital. One of the terms of her probation was that she be subject to random searches of her person, home and personal effects. Taking advantage of Plaintiff's probationary status, Defendant BILCICH put himself forward as the officer to make regular visits to Plaintiff's home. Defendant BILCHICH sometimes came alone and was able to interact with Plaintiff without any witnesses present, and sometimes another officer accompanied Defendant BILCHICH. When Defendant BILCHICH could not intrude without a witness, he invariably would send the other officer to search other parts of the Plaintiff's home so he could engage with the Plaintiff alone.

23.   Three days after the assault, Defendant BILCICH made his first visit to Plaintiff's home. Upon his entry of the home, he asked Plaintiff if she was "okay." She said no, that she was on bed rest, and was dizzy and nauseated from the concussion. Defendant BILCICH suggested that they get together and talk sometime and told her to "keep in touch."

24.   On or about November 1, 2011, Defendant BILCICH entered Plaintiff's home at 8:30 p.m. while she was alone. Another officer accompanied him. He instructed the other officer to search the home while he stayed with Plaintiff. He ordered Plaintiff to sit on a stool and then proceeded to ask her a series of personal questions, including "how is life treating you." When the other officer returned and said he had finished, BILCICH told him to "search it again." BILCICH continued to engage with Plaintiff until abruptly yelling to the other officer that it was time to go.

**COMPLAINT**

25.    On or about December 2, 2011, Defendant BILCICH entered Plaintiff's home with another officer. After telling the other officer to search the premises, Defendant BILCICH searched through Plaintiff's photos on her phone while engaging her in a conversational tone. He even picked up a spoon, sampled the food that Plaintiff was cooking on her stove, and commented on Plaintiff's cooking. When the other officer returned, he ordered him to "search it again" and then continued to engage with the Plaintiff.

26.    Defendant BILCICH's conduct and demeanor in Plaintiff's home on October 6, November 1 and December 2 was creepy, threatening and unprofessional. Given his previous unwarranted use of force that nearly cost Plaintiff her life, Defendant BILCICH's entry into the home caused Plaintiff severe anxiety, fear, apprehension, and emotional distress. Defendant BILCICH appeared to enjoy these 'visits' and the effect that they had on Plaintiff. All of this conduct caused Plaintiff further emotional suffering and trauma.

27.    In January of 2013, Plaintiff suffered a miscarriage. In mourning over her loss, and still suffering from the traumatic beating inflicted by Defendant BILCICH, she took some sleeping pills. Her fiancé, unaware that she had taken the pills, contacted medics due to his alarm over her unresponsiveness. When medics arrived, Defendant BILCICH arrived with them. He ordered Plaintiff to sit up and stated that he needed to administer an alcohol-detecting breath test. When she didn't sit up, he threatened to arrest her. He then put her in handcuffs and dragged her over to his patrol car. Before getting there, the accumulating stress she had been experiencing since the October 3 assault manifested in the form of a panic attack. Her primary symptom was extreme shortness of breath. Defendant BILCICH then called the Chief of the Department and told him what was going on. The Chief told him to take Plaintiff to the emergency room at once. BILCICH protested. He insisted that Plaintiff was "faking."

28.    After arriving at the hospital with Plaintiff, Defendant BILCICH attempted to impede Plaintiff's medical treatment by repeatedly informing medical personnel that Plaintiff

was "faking it." The medical personnel did not accept his account. Instead, they quickly evaluated her and determined that she was in need of emergency medical treatment. They inserted an IV into her arm and administered oxygen.

29.     As medical personal attended Plaintiff, Defendant BILCICH sat nearby. In time, he got up to leave. Before he did, he said he wouldn't arrest her "this time." He then put his hand on Plaintiff's shoulder and asked: "Christina, are you going to sue that officer that did that to you for excessive force?" Terrified over what appeared to be a veiled threat, Plaintiff said "no."

30.     On or about February 20, 2012, Defendant BILCICH and another officer entered Plaintiff's home while she was there with her minor daughter. He ordered the child to stay where she was and directed Plaintiff to go with him into another room. He also told the other officer to search other portions of the home. After a few minutes, the officer returned and Defendant BILCICH told him to "search it again." When the officer came back a second, Defendant BILCICH yelled "search it again!" The whole time the searches were being made, Defendant BILCICH spoke with the Plaintiff. At one point he informed her that he did not regret or feel bad that he injured her.

31.     From October 3, 2011 through February of 2012, Defendant BILCICH engaged in injurious, frightening, and abusive conduct toward the Plaintiff without justification. While he was entitled to investigate possible crimes, he was not entitled to smash the face of a person he was investigating into the pavement and nearly kill them. While he was entitled to arrest persons for possible crimes, he was not entitled to concuss them and knock out their teeth (among other substantial injuries), particularly when the person arrested neither posed a threat to officer safety nor could credibly interfere with the officer's ability to make the arrest. While Defendant BILCICH was entitled to conduct a search of the home of a person subject to probationary control, he was not entitled to come into the home and engage in creepy, abusive

1  and frightening conduct, including, but not limited to tasting the person's food that is cooking

2  on the stove, repeatedly directing fellow officers to search and research the home while he

3  engaged with the individual, isolating the person from their family members, and gloating to the

4  person how he didn't regret nearly killing them. While he was entitled to respond to investigate

5  a call of a medical emergency, he was not entitled to physically and emotionally harass the

6  person having the emergency, delay medical treatment, question the decisions of the emergency

7  medical providers already on-scene, and then suggest that things won't go well for the person if

8  they bring a lawsuit against him for his bizarre, violent, excessive, and abusive behavior as a

9  police officer.

10      32.     As described above, Defendant BILCICH has engaged in conduct directed

11  toward Plaintiff that violates the Constitution of the United States. Specifically, the conduct of

12  Defendant BILCICH represents a violation of the prohibition set forth in the Fourth and

13  Fourteenth Amendments of the Constitution of the United States against unreasonable searches

14  and seizures, and the right to be free from the intentional and unreasonable use of excessive

15  force. Moreover, the conduct of Defendant BILCICH represents a violation of the Due Process

16  and Privileges & Immunities Clauses of the Fourteenth Amendment of the Constitution of the

17  United States, in that said conduct constitutes an unjust deprivation of the liberty and privileges

18  and immunities of American citizenship that rightfully belong to the Plaintiff. Finally, the

19  conduct of Defendant BILCICH represents a violation of the Eighth and Fourteenth

20  Amendments to the Constitution of the United States, in that said conduct, coming in the

21  supposed context of Plaintiff's probationary status, constitutes the administration of punishment

22  that is both cruel and unusual.

23      33.     Because the Defendant BILCICH's violations of the Constitutional rights of the

24  Plaintiff have proximately caused injuries to the Plaintiff, Plaintiff is entitled to bring an action

25  for damages pursuant to 42 U.S. § 1983.

**COMPLAINT**

# IV.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Federal Civil Rights Violations

### (Fourth, Eight & Fourteenth Amendments; 42 U.S.C. § 1983)

### [Against Defendants Eric Bilcich]

29.    Plaintiff incorporates the allegations asserted in the foregoing paragraphs of this Complaint as though fully set forth in this First Cause of Action.

30.    Section 1 of the Fourteenth Amendment to the *Constitution of the United States* provides that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny any person within its jurisdiction of the equal protection of the laws."

31.    The Fourteenth Amendment's due process clause constitutes a repository of substantive protections against unlawful State action. Due process must be afforded any person who is subject to a potential deprivation of liberty. Deprivations of liberty include excessive force and conduct unrelated to lawful police functions that have the effect of harassing, vexing or emotionally tormenting the person subject to that conduct. Similarly, the Fourteenth Amendment's Privileges & Immunities Clause bars State interference with fundamental liberties of American Citizens, including interference with a citizen's bodily integrity, health and safety.

32.    Since ratification of the Fourteenth Amendment, the Supreme Court of the United States has incorporated most of the provisions of the Bill of Rights into the Due Process Clause of the Fourteenth Amendment. The effect of incorporation has been to define the scope of due process in accordance with textual provisions in the Bill of Rights. Among the rights incorporated into the Due Process Clause are those found in the Fourth and Eighth Amendments.

---

**COMPLAINT**

33.     The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." Unreasonable searches and seizures include, but are not limited to, seizures of a person in which the intentional and unreasonable use of excessive force is employed in a manner unjustified by the circumstances and having the effect of causing the person seized great bodily harm or placing the person's life in danger.

34.     The Eighth Amendment to the Constitution of the United State provides: "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." Cruel punishment includes infliction of bodily trauma with intent to cause great bodily harm or in reckless disregard for the safety of the person subjected to the punishment without any reasonable justification. Unusual punishment includes, but is not limited to, conduct that it intentionally or constructively designed to vex another person to the point of causing severe emotional and physical distress without any reasonable justification.

35.     The rights embodied in the Fourth and Eighth Amendments, and those comprised within the Due Process and Privileges & Immunities Clauses of the Fourteenth Amendment, are substantive rights possessed by the peoples of the United States, protecting them against certain kinds of adverse State Actions.

36.     Article VI, Section 3 of the Constitution of the United States provides, in part, that: "...all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution...." As agent of a political subdivision of the State of California working in an executive capacity, Defendant BILCICH was obligated to and actually did undertake the requisite and constitutionally prescribed oath.

37.     In accordance with the requirement that State executive and judicial officers swear an oath to support the Constitution of the United States, the People of the State of California have required its officials to swear an oath to support and defend the Constitution of

---

**COMPLAINT**

1  the United States. The People have made this requirement pursuant to Article XX, Section 3 of

2  the California Constitution. As an employee working in an executive capacity and employed by

3  a political subdivision of the State of California was required and actually did swear the

4  following oath: "that I will support and defend the Constitution of the United States and the

5  Constitution…against all enemies, foreign and domestic; that I will bear true and faithful

6  allegiance to the Constitution of the United States…; that I take this obligation freely; without

7  any mental reservation or purpose of evasion; and that I will well and faithfully discharge the

8  duties upon which I am about to enter."

9      38.    The right to a civil remedy for violations by agents of State and Local

10  governments acting under color of authority is afforded via Section 5 of the Fourteenth

11  Amendment, which provides that "Congress shall have power to enforce, by appropriate

12  legislation, the provisions of this article." In the exercise of this affirmative grant of legislative

13  authority, Congress enacted, and President Grant signed into law, the Civil Rights Act of 1871,

14  also known as the Ku Klux Klan Act. Among the provisions of the Act is that Section now

15  known as 42 U.S.C. § 1983, which provides that: "Every person who under color of any statute,

16  ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

17  subjects, or causes to be subjected, any citizen of the United States or other persons within the

18  jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

19  Constitution and laws, shall be libel to the party injured in an action at law, suit in equity, or

20  other proper proceeding for redress…."

21      39.    Defendant BILCICH engaged in conduct in violation of the Fourteenth

22  Amendment's Due Process and Privileges & Immunities Clauses of the Fourteenth Amendment

23  to the Constitution of the United States and the Fourth and Eighth Amendments of said

24  Constitution as incorporated into the aforementioned Due Process Clause.

25

**COMPLAINT**

40.     Specifically, by seizing ahold of the person of the Plaintiff and then slamming her face into the pavement and nearly causing her death, Defendant BILCICH acted without reasonable justification or probable cause, and thereby violated the Fourth and Fourteenth Amendments to the Constitution of the United States. Because Plaintiff was on probation, and because Defendant BILCICH was acting in the context of the authority of the State pursuant to Plaintiff's probationary status, his seizure of the person of the Plaintiff and slamming of her face into the pavement represented the administration of punishment that was both cruel and unusual, and thus in violation of the Eighth Amendment to the Constitution of the United States, as said Amendment is incorporated into the Fourteenth Amendment. Moreover, his recurring searches of Plaintiff's home and his further seizure of Plaintiff's person while she was in the midst of a medical emergency also constituted cruel and unusual administration of punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States. Finally, because Defendant BILCICH's conduct toward the Plaintiff undermined the right of the Plaintiff to be free from the unreasonable impairment of her liberty and her enjoyment of the privileges and immunities of citizenship, said conduct was violative of the Due Process and Privileges and Immunities Clauses of the Fourteenth Amendment to the Constitution of the United States.

41.     In acting in the manner described in this Complaint, Defendant BILCICH not only violated the rights of the Plaintiff as protected by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, but also his own Constitutionally mandated oath to defend the Constitution of the United States, which he swore, when he first undertook his duties as a peace officer employed by the City of Cotati.

42.     Defendant BILCICH's conduct occurred while he was acting under color of law or authority as a peace officer employed by the City of Cotati.

43.     Defendant BILCICH's conduct proximately caused the deprivation of liberty interests belonging to the Plaintiff that are protected by the Constitution of the United States.

1  Moreover, Defendant BILCICH's conduct, in proximately causing deprivation of Plaintiff's
2  liberty interests, also proximately caused her to suffer injury in the form of physical trauma,
3  severe emotional distress, and out of pocket expenses and/or debts exceeding $100,000 for
4  medical expenses, plus attorneys fees and costs required to redress these wrongs.

5      44.    Defendant BILCICH's conduct was engaged in with the intent to cause severe
6  physical and emotional injury to the Plaintiff, or in willful and/or wanton disregard for her
7  health and welfare and the liberty interests belonging to her and which are protected by the
8  Constitution of the United States.

9      45.    Wherefore, Plaintiff requests the relief appropriate to remedy the injuries alleged
10 in this First Cause of Action, as identified below in Section V of this Complaint.

11                          **SECOND CAUSE OF ACTION**

12                **Municipal Liability- Federal Civil Rights Violations**

13          **(Fourth, Eight & Fourteenth Amendments; 42 U.S.C. § 1983)**

14                **[Against Defendant City of Cotati and Does 1-20]**

15     46.    Plaintiff incorporates the allegations asserted in the foregoing paragraphs of this
16 Complaint as though fully set forth in this Second Cause of Action.

17     47.    The acts and/or omissions of Defendant BILCICH as alleged herein, were, upon
18 information and belief, caused by (1) inadequate and arbitrary training, supervision, and
19 discipline of officers by Defendant CITY OF COTATI and Does 1-20; and (2) Defendant CITY
20 OF COTATI and Does 1-20's failure to promulgate appropriate policies with respect to a lawful
21 arrest and use of force; and (3) the deliberate indifference of Defendant CITY OF COTATI and
22 Does 1-20 to the use of excessive force by its peace officers, including Defendant BILCICH;
23 and (4) the customs or de facto policies of Defendant CITY OF COTATI and Does 1-20.

24

25

                              **COMPLAINT**

48.     Plaintiff alleges, on information and belief, that the acts or omissions of Defendant BILCICH were ratified by the final decision makers of Defendant CITY OF COTATI and Does 1-20.

49.     Plaintiff alleges, on information and belief, that the final decision makers of the Defendant CITY OF COTATI and Does 1-20 including the head of its police department and senior staff members knew or reasonably should have known about Defendant BILCICH's propensity to employ excessive force on persons he placed under arrest and to engage in other harmful behaviors inconsistent with his appropriate role as a peace officer and with his oath support and defend the Constitution of the United States.

50.     These failures and actions by Defendant CITY OF COTATI and Does 1-20 constitute deliberate indifference on the part of Defendant CITY OF COTATI and Does 1-20 to its obligations to insure the preservation and protection of the Constitutional rights of Plaintiff.

51.     Upon information and belief, Defendant CITY OF COTATI and Does 1-20 knew or should have known that its acts and omissions would likely and foreseeably result in a violation of the Fourth, Eighth and Fourteenth Amendment rights of a person in the Plaintiff's situation. Defendant CITY OF COTATI and Does 1-20's acts and omissions were a moving force in the deprivation of Plaintiff's Constitutional rights and the injuries she suffered.

52.     Wherefore, Plaintiff requests the relief appropriate to remedy this First Cause of Action, as identified below in Section V of this Complaint.

## V.

### PRAYER FOR RELIEF

In light of the foregoing paragraphs, in which the basis for relief is set forth, Plaintiffs request the following relief:

**COMPLAINT**

1.   A Jury Trial;

2.   Nominal Damages;

3.   Special Damages in an amount to be proven at trial;

4.   Consequential Damages, or those damages naturally flowing from Defendants' misconduct, including, but not limited to, all out-of-pocket expenses, in an amount to be proven at trial;

5.   General Damages in an amount to be proven at trial;

6.   Punitive Damages due to the reckless, or wanton, or malicious motivation of Defendants when committing their wrongs against Plaintiff

7.   All available pre-judgment and post-judgment interest on any damages to be recovered by Plaintiff;

8.   Attorneys fees and costs of suit, as permitted by 42 U.S.C. § 1988;

9.   And for such other and further relief as the Court deems just and proper.

Dated: October 1, 2013

Jeremy R. Fietz, Esq.
Christy Chouteau, Esq.
Charles Applegate, Esq.
Benjaman T. Adams, Esq.
Gabriel M. Quinnan, Esq.

Attorneys for Plaintiffs

**COMPLAINT**

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands trial by jury on all causes of action herein.

3

4

Dated: October 1, 2013

5

6

7
Jeremy R. Fietz, Esq.
Christy A. Chouteau, Esq.
8
Charles W. Applegate, Esq.
Benjaman T. Adams, Esq.
9
Gabriel M. Quinnan, Esq.

10
Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COMPLAINT**